UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

| | |
|---|---|
| UNITED STATES OF AMERICA : | **ATTORNEY AFFIRMATION** |
| v. : | 07 Cr. 974 (LAP) |
| MARTIN AMOAH, : | |
| Defendant. : | |

------------------------------------------------------x

      I, Fiona Doherty, hereby declare under the penalties of perjury, pursuant to 28 U.S.C. § 1746, that:

      1.    I am an Assistant Federal Defender with the Federal Defenders of New York. I have been appointed by the Court to represent MARTIN AMOAH in this action. I make this affirmation in support of a motion to suppress Mr. Amoah's custodial statements, which were made on or about August 20, 2007.

      2.    The statements contained in this affirmation are based upon my review of the Complaint, the Indictment and other documents provided by the Government in discovery, as well as on Mr. Amoah's December 7, 2007 affirmation in support of this motion.

      3.    On August 20, 2007, Mr. Amoah was interviewed at John F. Kennedy Airport by a number of agents, including at least one agent from the Diplomatic Security Service (the "DSS"). The DSS agent, Gregory J. Milliman, prepared a report of the statements that Mr. Amoah allegedly made in that interview. (A copy of the DSS report is attached as Exhibit A.)

      4.    According to the DSS report, when Agent Milliman introduced himself to Mr. Amoah, Mr. Amoah recognized the agent's name and stated that he "knows this is regarding the passport application." Exhibit A. Mr. Amoah also allegedly apologized to the agent for not

contacting him about the passport since calling from Africa approximately one year earlier. Id. Mr. Amoah reportedly said that he was angry at his Aunt Carol, because she had lost the agent's number. Id.

5.   According to the DSS report, after Mr. Amoah made these statements, the agent brought him to an interview room and read him his Miranda rights. Id. Upon hearing his rights, Mr. Amoah made clear that he wished to invoke his right to silence and wanted a lawyer for any further questioning. Id.; see also Exhibit B (form documenting Mr. Amoah's invocation of his rights).

6.   At that point, according to the DSS report, the agent stopped questioning Mr. Amoah and left the room to call the Assistant United States Attorney on duty. See Exhibit A. When the agent returned to the room, Mr. Amoah allegedly made additional statements, asking the agent to "help get him out of the situation" and repeating his apologies for not contacting the agent earlier. Id. The agent then allegedly told Mr. Amoah that the agent could not talk to him, as Mr. Amoah had requested a lawyer. Id. According to the DSS report, Mr. Amoah indicated that he did want to talk, but again refused to sign the "waiver of rights" form. Id. Mr. Amoah reportedly "continued to say how sorry [he] was and that [he] should not have purchased the documents or applied for the passport." Id.

7.   Mr. Amoah's account of the interview is quite different. According to Mr. Amoah, the statements that he made – both before and after he was informed of his Miranda rights – were made in response to questioning by the officials. See December 7, 2007 Affirmation of Martin Amoah ¶¶ 3-6. The DSS agent had begun questioning him even before he made the first set of statements, the statements that were made before he was informed of his Miranda rights. Id. ¶¶

2

3-4. Specifically, the agent had asked Mr. Amoah why neither he nor his aunt had followed up with the agent previously. Id. ¶ 3. The second set of statements, which were made after Mr. Amoah invoked his right to counsel, were also made as a result of questioning by the officials. Even after Mr. Amoah asked for a lawyer, the agents continued questioning him, trying to coax him to talk. Id. ¶¶ 5-6.

8. Given these circumstances, as well as the arguments set forth in the accompanying Memorandum of Law, both sets of statements should be suppressed because they were obtained in violation of Mr. Amoah's rights under Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth and Sixth Amendments to the United States Constitution.

WHEREFORE, it is respectfully requested that this Court enter an order suppressing Mr. Amoah's custodial statements. In the alternative, the Court should order a hearing on Mr. Amoah's motion to suppress the statements.

I declare under the penalty of perjury that the foregoing is true and accurate.

Dated:   New York, New York
         December 13, 2007

_____
FIONA DOHERTY, ESQ