UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------x

UNITED STATES OF AMERICA          :

    - v. -                            :        07 Cr. 974 (LAP)

MARTIN AMOAH,                     :

        Defendant.             :

------------------------------------------------x

# DEFENDANT MARTIN AMOAH'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS CUSTODIAL STATEMENTS

LEONARD F. JOY, ESQ.
Federal Defenders of New York
Attorney for Defendant
**MARTIN AMOAH**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8764

**FIONA DOHERTY, ESQ.**
Of Counsel

TO:   **MICHAEL J. GARCIA, ESQ.**
       United States Attorney
       Southern District of New York
       One. St. Andrew's Plaza
       New York, New York 10007
       Attn: **DAVID O'NEIL, ESQ.**
           Assistant United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA          :

    - v. -                                     :          07 Cr. 974 (LAP)

MARTIN AMOAH,                          :

              Defendant.                    :

------------------------------------------------------x

## DEFENDANT MARTIN AMOAH'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO SUPPRESS CUSTODIAL STATEMENTS

The defendant, Martin Amoah, hereby moves under Federal Rules of Criminal Procedure 12(b)(3) and 41(h) to suppress custodial statements elicited from him in violation of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and the Fifth and Sixth Amendments to the United States Constitution. In particular, Mr. Amoah moves to suppress two sets of statements that he made on or about August 20, 2007 at John F. Kennedy Airport ("JFK Airport"). Mr. Amoah made the first set of statements before he was advised of his Miranda rights. He made the second set of statements after he declined to waive his Miranda rights and specifically invoked his right to silence and his right to counsel. Both sets of statements were the product of custodial interrogation.

### Statement of Facts

Mr. Amoah is charged in a two-count indictment with: (1) making a false statement in a passport application in violation of 18 U.S.C. § 1542; and (2) using without lawful authority a means of identification of another person in violation of 18 U.S.C. § 1028A. See Indictment.

The charges against Mr. Amoah are based upon a United States passport application that he allegedly submitted on or about August 11, 2005. Id.

On August 20, 2007, Mr. Amoah was interviewed at John F. Kennedy Airport by a number of agents, including at least one agent from the Diplomatic Security Service (the "DSS"). See December 13, 2007 Affirmation of Fiona Doherty, Esq. (the "Doherty Affirmation") ¶ 3. The DSS agent, Gregory J. Milliman, prepared a report of the interview. (A copy of the DSS report is attached as Exhibit A to the Doherty Affirmation.) According to that report, when Agent Milliman introduced himself to Mr. Amoah, Mr. Amoah recognized the agent's name and stated that he "knows this is regarding the passport application." Doherty Affirmation ¶ 4. Mr. Amoah also allegedly apologized to the agent for not contacting him about the passport since calling from Africa approximately one year earlier. Id. Mr. Amoah reportedly said that he was angry at his Aunt Carol, because she had lost the agent's number. Id.

According to the DSS report, after Mr. Amoah made these statements, the agent brought him to an interview room and read him his Miranda rights. Id. ¶ 5. Upon hearing his rights, Mr. Amoah refused to waive these rights and stated that he wished to invoke his right to silence and his right to counsel. Id. Mr. Amoah's invocation of these rights is reflected on the Miranda form that the agents reviewed with him during the interview. See Doherty Affirmation, Exhibit B (form documenting Mr. Amoah's invocation of his rights).

At that point, according to the DSS report, the agent stopped questioning Mr. Amoah and left the room to call the Assistant United States Attorney on duty. Id. ¶ 6. When the agent returned to the room, Mr. Amoah allegedly made additional statements, asking the agent to "help get him out of the situation" and repeating his apologies for not contacting the agent earlier. Id.

The agent then allegedly told Mr. Amoah that the agent could not talk to him, as Mr. Amoah had requested a lawyer. Id. According to the DSS report, Mr. Amoah indicated that he did want to talk, but again refused to sign the "waiver of rights" form. Id. Mr. Amoah allegedly "continued to say how sorry [he] was and that [he] should not have purchased the documents or applied for the passport." Id.

Mr. Amoah's version of these events differs materially. Although Mr. Amoah acknowledges having made statements to the agents, he maintains that all of the statements were made in the context of custodial interrogation. See December 7, 2007 Affirmation of Martin Amoah (the "Amoah Affirmation"). Specifically, he recalls that he was stopped at JFK Airport on or about August 20, 2007 and instructed to remain in a hallway. Id. ¶ 2. He was not free to leave and was told that agents would come and talk to him. Id. When the agents arrived, one of the agents began questioning him, asking why neither Mr. Amoah nor his aunt had followed up with the agent. Id. ¶ 3. Mr. Amoah made statements in response to this question. Id. It was only after Mr. Amoah made this first set of statements that he was informed of his Miranda rights. Id. ¶¶ 3-4.

After hearing his Miranda rights, Mr. Amoah specifically refused to waive these rights. He invoked his right to silence and told the agents that he wanted a lawyer for any further questioning. Id. ¶ 5; see also Doherty Affirmation, Exhibit B. Despite this, the agents continued to question him. Amoah Affirmation ¶ 6. One of the agents told him that the agents could not help him if he did not talk to them. Id. As a result, Mr. Amoah made the second set of statements. Id.

**Legal Argument**

The Government may use a defendant's statement without transgressing his Fifth Amendment right against self-incrimination only when the decision to confess is the defendant's free choice. See Miranda v. Arizona, 384 U.S. 344, 444 (1966). To protect the Fifth Amendment right against self-incrimination, the Supreme Court in Miranda ruled that police officers may not interrogate a suspect who has been taken into custody without first warning the person of his rights to remain silent and to legal counsel. 384 U.S. at 479. When "a defendant is not advised of his Miranda rights prior to making his custodial statement, an irrebuttable presumption of compulsion arises and the state cannot show that the suspect waived his rights voluntarily." United States v. Gaines, 295 F.3d 293, 298 (2d Cir. 2002) (citing Oregon v. Elstad, 470 U.S. 298, 307 (1985)). In these circumstances, the prosecution is barred from using statements obtained during the interrogation to establish its case-in-chief. See Michigan v. Harvey, 494 U.S. 344, 350 (1990).

Under the applicable case-law, the first set of statements Mr. Amoah made at JFK Airport must be suppressed. After arriving at the airport, Mr. Amoah was detained in a hallway and was told to wait for agents, who were planning to come and talk to him. See Amoah Affirmation ¶ 2. He was not free to leave. Id. Once the agents arrived, they began questioning him without informing him of his Miranda rights. Id. ¶¶ 3-4. As Mr. Amoah made the first set of statements in response to this custodial interrogation, an irrebuttable presumption of compulsion arises. The statements are not admissible against him.

The second set of statements, which Mr. Amoah also made at JFK Airport, are equally inadmissible. Mr. Amoah made these statements after being advised of his Miranda rights, but

only after he declined to waive these rights, specifically invoking his right to silence and requesting the assistance of an attorney. Id. ¶ 5. Nevertheless, the agents continued to question him, trying to coax him to talk. Id. ¶ 6. One of the agents told him that the agents could not help him if he refused to talk to them. Id. As a result, Mr. Amoah made the second set of statements in response to their questions. Id.

Given Mr. Amoah's invocation of his right to silence, the agents' continued interview of him violated his rights under the Supreme Court's decision in Miranda, 384 U.S. at 344. In Miranda, the Court held that once warnings have been given and "an individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." Id. at 473-74. The Court emphasized that any statement taken thereafter would be presumptively compelled:

> [A]ny statement taken after the person invokes the privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

Id. In an attempt to counteract these inherently coercive pressures, the Court instructed law enforcement officers to "scrupulously honor[]" a suspect's decision to exercise his right to silence. Id. at 458, 479.

The second set of statements should also be suppressed on the separate ground that Mr. Amoah had previously invoked his right to counsel. Under Edwards v. Arizona, 451 U.S. 477 (1981), if a suspect invokes his right to counsel at any time, law enforcement officials must immediately cease questioning him until an attorney is present. Id. at 484-85. The Supreme Court has explained that this rule serves the "prophylactic purpose" of preventing officers from

"badgering a suspect into waiving his previously asserted <u>Miranda</u> rights." <u>Davis v. United States</u>, 512 U.S. 452, 458 (1994) (citations omitted). In this case, the officers should have terminated the interview immediately after Mr. Amoah requested the assistance of counsel. Instead, they continued to question him and to try to persuade him to talk. Accordingly, all of the statements that he made after invoking his right to counsel should be suppressed.

### Conclusion

Mr. Amoah respectfully requests that this Court enter an order suppressing both sets of custodial statements, those made both before and after he was read his <u>Miranda</u> warnings, as the statements were obtained in violation of his rights.

Dated:   New York, New York
　　　　 December 13, 2007

　　　　　　　　　　　　　　　　　　　　　　LEONARD F. JOY, ESQ.
　　　　　　　　　　　　　　　　　　　　　　Federal Defenders of New York, Inc.
　　　　　　　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　　　　　　　**MARTIN AMOAH**
　　　　　　　　　　　　　　　　　　　　　　52 Duane Street - 10th Floor
　　　　　　　　　　　　　　　　　　　　　　New York, New York  10007
　　　　　　　　　　　　　　　　　　　　　　Tel.: (212) 417-8734

　　　　　　　　　　　　　　　　　　　　　　*/s/ Fiona Doherty*
　　　　　　　　　　　　　　　　　　　　　　FIONA DOHERTY, ESQ.
　　　　　　　　　　　　　　　　　　　　　　<u>Of Counsel</u>

TO:   **MICHAEL J. GARCIA, ESQ.**
　　　　United States Attorney
　　　　Southern District of New York
　　　　One Saint Andrew's Plaza
　　　　New York, New York 10007
　　　　Attn: **DAVID O'NEIL, ESQ.**
　　　　　　Assistant United States Attorney